## No. 2510.—J. R. WOLF *v.* MITCHELL, CRAIG & Co.

In this case the evidence shows that plaintiff had several conversations with defendants, or some of them, in reference to the leasing of certain houses and tenements for a store on Canal street; that the parties intended to perfect their agreement about the lease by reducing it to writing. It was never reduced to writing, and the plaintiff now seeks to enforce it as a verbal lease.

Held—That it being shown that it was the obvious intention of the parties to reduce the terms of the lease to writing before it was considered as complete, that the defendants, as lessees, could not be held on the plaintiff's showing a verbal lease merely.

| 24 | 433 |
| 51 | 1729 |
| 24 | 433 |
| 52 | 427 |
| 52 | 428 |
| 24 | 433 |
| 106 | 311 |
| 24 | 433 |
| d125 | 910 |

APPEAL from the Sixth District Court, parish of Orleans.    *Cooley*, J.
*W. H. Hunt*, for plaintiff and appellant. *Roselius & Phillips*, for defendants and appellees.

HOWELL, J.   In December, 1867, the plaintiff sued upon an alleged verbal contract of lease entered into between himself, through his agent J. A. Blaffer, and the commercial firm of Mitchell, Craig & Co.,

28

on the eighth of June, 1867, of two stores on Canal street, for five years, commencing on the first of August, 1867, and ending on the thirty-first of July, 1872, for the price of $9000 for the first year, $10,000 for the second year, and $12,000 each for the successive years, payable in monthly installments at the end of each month.

The defendants pleaded the general issue, and alleged "that they did contemplate making a contract for the hiring of the property mentioned in said petition, and had a conversation with said Blaffer at the time mentioned in said petition, but that a contract was to be made in writing at a future day, and before said day arrived, defendants refused to make that contract, or any other contract in relation to said stores, and notified said Wolf, thr ,ugh his agent, that they should not make any contract of hire of said property. And they allege that they never did make any contract with said Wolf or his agent, either verbally or otherwise, for the hire of said property." Subsequently the administrator of J. R. Craig, who died pending the suit, answered, " that the acts of said Craig in the premises were not valid and binding on said firm or succession; that at the time charged in said petition he was drunk, and was incapable of giving a valid consent to the pretended contract of lease set forth in the petition, and that no binding contract was then made or could be made by said Craig."

From a judgment in favor of plaintiff enforcing the lease the defendants appealed.

The question arises, does the evidence establish the contract declared on as complete between the parties? We think not.

In making a contract of the extent, amount and importance of the one under consideration, it is reasonable that the parties should have reduced it to writing so as to make it binding in all its stipulations before considering it finally closed, and we think the evidence shows that such was the intention of the parties in this instance.

Blaffer, after stating the conversation in which the general terms of the lease were discussed and agreed to, says: "I then told Mr. Craig that for the purpose of making this contract binding on both parties, we had better repair at once to the office of Gottschalk & Magner, notaries public, there to draw up a writing embracing what had been done and said," which Craig declined to do at that time. He says they then " went to the office of Mitchell, Craig & Co., and there met Mr. Rayburn. The entire agreement and understanding that had previously taken place between Mr. Craig and myself at the building and on our way to the office, were there repeated in presence of Mr. Rayburn." This witness says: "He (Craig) and Mr. Blaffer came into the office together; one of them said, 'here is Mr. Rayburn, we can fix it up before him.' Then they spoke in regard to the leasing of the stores on Canal street, and they did not decide. The difficulty was in

r egard to the rent—the time it should commence. Nothing said about making rent notes in my presence. The terms they proposed were to take the stores on five years lease, the first year $9000, the second year $10,000, and the third, fourth and fifth years $12,000. That was put in pencil on a slip of paper by Mr. Blaffer. Then Mr. Blaffer wanted him to go to the notaries, Messrs. Gottschalk & Magner, to have the lease drawn up and signed, and Mr. Craig declined to do so. That is all that transpired in the office." In answer to questions, he stated he was sure the lease was to be written, "because Mr. Blaffer insisted on it. When Mr. Craig would not go to a notary at once, Mr. Blaffer wanted something drawn up in my presence to witness."

We must, under the evidence, regard the taking of the keys and ordering signs made as incidents in the progress of the negotiations, and that the contract of lease was only to be conclusive when reduced to writing, before which the defendants declined closing it.

It is therefore unnecessary to examine other questions of law and the second ground of defense presented.

Is is therefore ordered that the judgment appealed from be reversed, and that there be judgment in favor of defendants, with costs in both courts.