Laroussini vs. Werlein.

No. 13,065.

### H. LAROUSSINI VS. PHILIP WERLEIN.

#### SYLLABUS.

1. A verbal contract of lease, complete in itself independent of any writing, and unaccompanied by an intention to have the same reduced to writing as perfecting it, is an enforceable contract.
2. And if such a verbal contract be made and *subsequently* the parties agree that the same shall be reduced to writing and be signed, and afterwards there is a failure to so reduce it to writing and to signature—one of the parties refusing—it is still enforceable as a binding contract.
3. But if when a verbal contract of lease is agreed on, it is understood, contemplated and intended, that it should be reduced to writing; that there should be a written lease; that the written lease should take the place of, and stand for what had been agreed on verbally in respect to the leasing of the property, then until the writing is drawn up and signed, the contract is inchoate, and either party may, before signing, recede.

APPEAL from the Civil District Court, Parish of Orleans— *King, J.*

*Henry Denis* and *Branch K. Miller* for Plaintiff, Appellant.

*Lazarus & Luce* and *Edwin T. Merrick* for Defendant, Appellee.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff sues to enforce a verbal contract of lease on valuable property in New Orleans, for the term of five years at 750 per month, or $9000 *per annum.*

His contention is that there was entered into between himself and defendant a complete and final verbal contract of lease, for the more secure proof of which an act in writing was to have been executed;

but that the binding obligation of the agreement was in no manner to depend upon the said writing, or to be suspended, or revocable, in the meantime.

The contention of the defendant is that while the lease of the property was negotiated at personal interviews between himself and plaintiff, the verbal agreement was only preliminary to a written contract intended to be passed, and until the latter was consummated, neither party was bound by the verbal agreement.

The parties sustained at the time the relation of lessor and lessee towards each other. The defendant was occupying the identical premises under a previous five years' lease, which was drawing towards its close, and the contract now declared on was in renewal of the lease for another five years, at a rate of rental $50 per month greater than the then existing lease called for.

The latter was in writing—an authentic act—and rent notes for the monthly payments of $700 had been given.

It was in contemplation that rent notes for the renewed lease were to be given.

About a week after the verbal agreement of renewal had taken place, the plaintiff called at the office of a notary public and informing the latter he had leased his store to the defendant, mentioning the terms of the new lease and the monthly rental, requested him to draw up an act of lease substantially similar to the one then existing between the parties for the same premises.

The notary did so and also prepared sixty rent notes, at $750 each, to cover the five years lease. He then notified defendant the lease and notes were ready for signature. Some delay ensued, but in the course of a week or ten days later the plaintiff, with the notary, repaired to the office of the defendant. The lease as prepared by the notary had been handed to the defendant at his request for inspection some days before, and he had it in his possession when the notary and the plaintiff called. The notary informed him the object of the call was to formally execute the lease and obtain his signature to the rent notes.

Whereupon defendant replied that he had changed his mind and would not execute the lease, and handed the written instrument and the unsigned notes back to the notary.

Following this, the plaintiff brought an action to enforce the

specific performance of defendant's promise to sign the act of lease in execution of the verbal agreement.

That suit was dismissed on exception, and the judgment of dismissal, on the ground of no cause of action, was affirmed here. See 48 La. Ann. 13.

The present suit was then instituted, basing recovery on the verbal lease.

It was met by the plea of *res judicata,* filed by way of exception, predicated upon the judgment in the first case.

The plea was sustained by the trial court and the suit dismissed; but on appeal here that judgment was reversed, the case ordered reinstated on the docket and a trial upon its merits directed to be proceeded with.

See 50 La. Ann. 637.

Trial followed with the result that plaintiff's demand was rejected. He appealed and this appeal is now before us.

The question presented is whether there was a valid, binding agreement, amounting to a completed contract, verbally made between the parties, which is enforceable irrespective of the fact that the same was not followed by the execution of a written contract of lease; or whether there was only a bargain between the parties to lease, or a completed negotiation to that end, or an understanding and agreement as to terms, conditions, duration, etc., which was to attain to the dignity and importance of a contract of lease, and obligatory, only after the same had been reduced to writing and signed by the parties.

If the first, the case is with the plaintiff; if the latter, with the defendant.

A verbal contract of lease, complete in itself independent of any writing, and unaccompanied by an intention to have the same reduced to writing as perfecting it, is an enforceable contract. And if such a verbal contract be made and *subsequently* the parties agree that the same shall be reduced to writing and be signed, and afterwards there is a failure to so reduce it to writing and to signature—one of the parties refusing—it is still enforceable as a binding contract. Carlin vs. Harding, 10 La. 225; Avendano vs. Arthur & Co., 30 La. Ann. 321.

But if when a verbal contract of lease is agreed on, it is understood, contemplated and intended that it should be reduced to writing, that there should be a written lease, that the written lease should take the place of, and stand for what has been agreed on verbally in respect to

the leasing of the property, then until the writing is drawn up and signed the contract is inchoate, incomplete, and either party, before signing, may recant, retract, recede, withdraw, decline to go further, refuse to consummate. Fredericks vs. Fasnacht, 30 La. Ann. 117; Villere vs. Brognier, 3 M. 349-527; Blocker vs. Tillman, 4 La. 80; Wolf vs. Mitchell, Craig & Co., 24 La. Ann. 434; Fernandez vs. Soulie, 28 La. Ann. 31; Des Boulet vs. Gravier, 1 N. S. 421-492; Meyer vs. Labau, 51 La. Ann. 1729.

Judged by the rule thus laid down the case at bar is with the defendant.

Undoubtedly these parties litigant did agree verbally upon a contract of lease in renewal of the then existing lease; but that this was to be followed by a writing setting forth the same, and to be signed by the contracting parties, which writing should take the place of and stand for what had been agreed on verbally, is established beyond per adventure.

This was, we think, the understanding and intention of the parties, and this understanding and intention was contemporaneous with the verbal agreement made. After agreeing verbally with the defendant about the lease, plaintiff left the store, where the interview had been held, to have, later, the contract drawn by his notary. Defendant had suggested that it be merely endorsed upon the then existing written contract of lease, but plaintiff had not consented to this. He desired a formal contract drawn in renewal of the lease, with accompanying notes, and such contract was drawn and the notes prepared.

Whether the renewal contract was to be endorsed upon the old contract of lease and signed by the parties, or whether a fresh contract was to be drawn and signed, equally evidences the intention that a written contract was to be made.

The agreement reached, as to the renewal of the lease, was to be reduced to writing in some form or another. The law is not particular as to this form, nor as to the verbiage used, nor as to the length of the contract, and however brief the writing, if it were part of the understanding there should be a writing, as we hold was the case, such writing suffices, provided it sets forth the intention of the parties, and until it is drawn up and signed no contract of lease was perfected.

Plaintiff does not deny that a writing setting forth the lease was contemplated and intended at the time the verbal agreement was made,

but contends that this was to serve only as *proof* of the agreement, and that the contract being complete without it, the parties remained bound even though the written act was not executed.

Considering the many circumstances disclosed by the record militating against it, we can not accept this view of the case. Nor do we think it can be pressed with consistency in face of the fact that having failed to obtain the signature of defendant to the new contract and notes, plaintiff first brought suit to compel the signing of the same.

The contract was to be reduced to writing; the lease had yet to be executed. There is no contradiction as to that. This understanding, contemplation and intention as to the writing, as to the execution of a written lease, was part of the transaction that went to make up the verbal agreement, and the same can not be held to have been completed until the written lease was prepared and signed.

The plaintiff had had a long experience in leasing real estate and is a conservative business man. A five years *verbal* lease of high-priced property was not a reasonable business transaction. He had never finally closed a contract of lease except in writing, and had never put a tenant in possession of premises except under a written contract of lease.

These are strong circumstances militating against the probability of a completed verbal contract having been made.

In Wolf vs. Mitchell, Craig & Co., 24 La. Ann. 434, where a verbal lease of property for five years at the price of $9000 for the first year, $10,000 for the second year, and $12,000 for the three following years, was sought to be enforced, it was held "it being shown that it was the obvious intention of the parties to reduce the terms of the lease to writing before it was considered as complete, the defendants, as lessees, could not be held on the plaintiff's showing a verbal lease merely."

And in this connection it was said: "In making a contract to the extent, amount and importance of the one under consideration, it is reasonable that the parties should have reduced it to writing so as to make it binding in all its stipulations before considering it fully closed. * * *"

In the lease under consideration, as shown by the copy plaintiff had drawn up by the notary, there were many and drastic stipulations, such as, that the non-payment of any one of the rent notes at maturity

should cause all the remaining notes to become due and demandable, payment of attorney's fees (5 per cent.) in case of suit to collect the rent, keeping of the premises in good order at the expense of the lessee, the non-dissolution of the lease in the event the building should be destroyed by fire, the reservation of the right by the lessor to cancel the lease in the event of the violation of any of the conditions by the lessee, etc.

It surely was not intended that a contract of lease embracing concessions, rights and obligations of this character was to be left to the doubts and uncertainties of a mere verbal agreement.

And that the written instrument which was to follow was only to furnish proof of a *completed*, anterior, verbal contract of lease, is not, we think, sustained by the evidence. Nor does it comport with what is usual among business men in transactions of that character.

We incline to the conviction that the written act which the parties intended to execute between themselves was to be the contract itself. This being so the law fixed their rights and responsibilities, and neither party was bound until the written instrument was passed, and either had the right, before consummation, of receding.

Judgment affirmed.

Mr. Justice Breaux, dissents.

Rehearing refused.