OVERTON, J.
 

 This suit comes before us on an appeal from a judgment sustaining an exception of no' cause of action. The suit in which the judgment was rendered is one for damages for the breach of an alleged contract by which it is contended defendant purchased, or agreed to purchase, a number of hardwood logs, scaling 200,000 feet, with a leeway of 50,000 feet. The contract, it is alleged, was confected, in part, by correspondence between the parties, which is attached to the petition, and, in part, verbally. The main question presented by the exception, and the only one which we find it necessary to consider, is whether the petition shows that the contract was consummated.
 

 The petition discloses that the offer to purchase the logs grew out of conversations between plaintiff and defendant’s agents Frank M. Robertson and C. B. Dudley. On March 17, 1923, plaintiff confirmed these conversations by letter, addressed to defendant. He mentions, in this letter, the kind, quality, dimensions, and prices of the logs, which he understands defendant will agree to accept, and also advises defendant that he understands that it will accept 500,000 feet, or any part thereof, at any time within the next three1 months, the logs to be delivered at East Baton Rouge, Da., by barge or in rafts, f. o. b., defendant to inspect the logs at loading point, and to pay cash for them. He also informs defendant in this letter that he has written his associate in the matter, and will advise defendant during the latter part of the next week whether he will be in position to furnish the logs.
 

 On March 19, 1923, defendant wrote plaintiff, acknowledging receipt of the foregoing letter, repeating that part of plaintiffs’ letter relating to the kind, quality, and dimensions of the logs, the prices for the several kinds, and the point of delivery. In this letter defendant informed plaintiff that it was willing to inspect the logs at the loading point, but would not measure or accept them, except at the point of delivery; that it would pay cash for the logs, less 2 per cent., on delivery, and that it would take any number of feet plaintiff would designate, from 200,000 to 500,000 feet, allowing plaintiff a leeway of 50,000 feet, but would not agree to accept 500,000 feet, or any part of that amount, because that would make the number of feet to be delivered too indefinite. Defendant also informed plaintiff in this letter that, if he was willing to make the contract in accordance with the foregoing suggestions, it would be very glad to enter into the contract with him.
 

 On March 28, 1923, plaintiff wrote defendant, confirming a conversation, in which he said that he understood that on account of weather conditions the proposition to purchase the logs would be kept open for two weeks, and on April 17, 1923, he wrote advising defendant that weather conditions were improying and that he would be able to deliver a cargo of ash, white oak, and red
 
 *475
 
 oak logs; that he was making arrangements to have the l&gs towed to East Baton Rouge, and was preparing to make a special trip himself to.examine into the logging conditions, to assure himself that he could make delivery in time, with the understanding that, if he advised defendant that he could make delivery within 90 days of a stated quantity of ash, red oak, and white oak logs, with a leeway of 50,000 feet, the quantity, however, to be not less than 200,000 feet, defendant would place an order with him at prices stated in its letter of March 19, 1923.
 

 In reply to this letter, defendant wrote plaintiff, from its New Orleans office, on April 18, 1923, as follows:
 

 “Replying to your favor of April 17th regarding contract for logs, wish to advise that We are willing to make a contract for those logs to be delivered f. o. b. barge at East Baton Rouge, La., at prices stated in our letter of March 19 th, delivery at East Baton Rouge, La., not later than July 1, 1923.
 

 “We will send our log man to grade and measure the logs on the river bank before loading, but it is expressly understood that we do not accept the logs until they are actually delivered at East Baton Rouge, La.
 

 “We understand that you are to advise us within 10 days from date whether or not you will be in a position to make this contract. The contract to cover 200,000 feet, with a leeway of 50,000 feet, more or less.”
 

 Plaintiff did not reply in writing to this letter, but it appears from the body of the petition that, before the expiration of the 10 days mentioned in the letter, plaintiff telephoned defendant’s agent, who was attending to the matter, that he had contracted to obtain the necessary logs to fill the contract, and therefore accepted the contract, as outlined in defendant’s letter of ‘March 19, 1923, and as modified by the letter of April 18, 1923; that defendant’s agent, in reply, told plaintiff to come to defendant’s office on April 30, 1923, to receive shipping instructions; that, on that day, defendant’s agent notified plaintiff not to come until the following Wednesday or Thursday, when an official of defendant would be. present, and the matter could be discussed;- that plaintiff notwithstanding this suggestion, went to defendant’s office, and that, after reaching there, he was notified by defendant’s agent, who, while plaintiff was there, communicated by telephone with defendant’s office at Memphis, that he was instructed to proceed no further in the matter. Plaintiff, on returning to his place of business, wrote defendant’s local office, under date of April 30, 1923, as follows:
 

 “After my visit to your office this morning, and your refusal to complete the details of our contract, I wired your Memphis office as follows:
 

 “ ‘Under terms of your agent Robertson’s letters March 19th, April 18th, and verbal agreement with him April 28th, I considered the sale of oak and ash logs a bona fide contract, but upon going to agent Robertson today
 
 to complete with signature according to agreement
 
 he would not sign under your direction by phone. I have acted all along in good faith, am now logging and am committed to several thousand dollars expense, and expect you to instruct agent Robertson at once to fulfill your part contract. Answer at once.’ ” (Italics ours.)
 

 The letter, so far as it is pertinent to the exception under consideration, continues as follows:
 

 “On the strength of representations made by your Mr. Dudley and your Mr. Robertson in this office, and my letter of acceptance dated March 17th, and your acknowledgment by letter dated March 19th,
 
 wherein we agreed to make a contract and everything fully assented to, with the only exception that I would advise you the amount of logs that I could deliver, and when this was done then enter into a formal written contract.
 
 This (referring to the number of logs that could be delivered) has now been done, and I am therefore at a loss to Understand your refusal to carry out your part of the agreement.” (Italics ours.)
 

 On the same day that this letter was written, plaintiff sent defendant a telegram, addressed to its Memphis office, a copy of
 
 *477
 
 which is given in the foregoing excerpt. In answer to this telegram, defendant telegraphed plaintiff that it had no record of any contract with him. Plaintiff then notified defendant by letter that he would dispose of the logs for the latter’s account to the best possible advantage. The petition shows that plaintiff found that he could not sell the logs, except at a heavy sacrifice, and therefore, in order to mitigate the damages sustained, manufactured the logs into lumber, and sold the lumber, but nevertheless sustained a serious loss, for which he sues.
 

 The foregoing is the substance of the petition and documents thereto attached.
 

 One of defendant’s contentions is that the petition, together with the documents thereto attached, does not show that all the terms of the contract had been agreed to, when defendant is alleged to have breached it, and hence that there was no contract to breach. While there are certain expressions, in certain of the correspondence, attached to the petition, which, if considered alone, would so indicate, yet we are inclined to the view that the petition, including the correspondence attached, when considered as a whole, does show that all the terms that the parties intended to insert in the proposed contract had been agreed to, when defendant refused to proceed further.
 

 Defendant also contends that the alleged contract, consisting partly of statements in letters and partly of verbal statements, was never consummated, for the reason that the negotiations leading up to it provided that the contract should be a written one, and that, until it was reduced to writing and signed by both parties, either had the right to withdraw. On the other hand, it is plaintiff’s contention that an agreement between the parties, when their minds have met upon all essentials, constitutes a contract between them, and binds them at once, although their agreement contemplates that the contract should be reduced to writing, unless it appears that it was the intention of the parties to be bound only upon the execution of the formal instrument, the burden of showing which is upon the one seeking to show that the contract was never consummated.
 

 There can be no question that, when defendant’s agent, acting under defendant’s instructions, refused to reduce the contract to writing and. to sign it, thereby refusing to proceed any further in the matter, plaintiff’s consent to the contract was merely verbal, and hence that the agreement had not reached the written form had in view, as disclosed by some of the letters attached to the petition. The question therefore is: Did defendant have a legal right to. withdraw at that time?
 

 In Des Boulets v. Gravier, 1 Mart. (N. S.) 420, which was a suit for the price of a schooner, it was said:
 

 “The authorities are express that, if the parties agree that the contract is to be reduced to writing, it is not complete until that writing is made and signed.”
 

 The court then, in taking up for consideration the contention that the foregoing rule had no application, because the vendee acknowledged that he was in possession of the schooner, said :
 

 “We regard this fact of possession, as one of those circumstances which, coupled with others, would have made the sale complete, if there had been no agreement to put it in writing. But, when that agreement exists, the necessity of complying with it arises from the parties having added that condition to other things required to make a legal contract. No case, indeed, could occur where the operation of the privilege of law here invoked could be examined, unless the contract was complete, independent of its being reduced to writing, and we cannot distinguish between possession, and consent, and price, and the other circumstances which would make the agreement binding.
 

 “Pothier, who states the general rule to be such as it is found in the authorities already
 
 *479
 
 referred to, adds that it must appear to be the intention of the parties to make the perfection of the agreement depend on the writing, for, if it was merely contemplated to secure a more authentic mode of proof, then neither party can pretend the contract was not complete. Pothier, Traité des Obligations, No. 11. Such also appears to be the opinion of Gregorio Lopez, in his commentary on the law of the Partida, already cited, 5, 5, 6. It is unnecessary for us to say whether we are prepared to go the whole length with these commentators; for, taking the rule with the modifications they have made, and testing this case by it, we are brought to the same result as if we pursued the literal expression of the law.”
 

 In Montague v. Weil & Bro., 30 La. Ann.
 
 50,
 
 which was a suit on a contract of lease, which the defendants had frequently expressed their willingness to sign, but which they did not sign, the lease being a renewal of a preceding one, but for a smaller rental, the court applied the rule from Pothier, stated in the foregoing excerpt, and held, as shown by the syllabus, that:
 

 “The reduction of an agreement to writing, signed by the parties, is not necessary to its perfection as a contract, unless it clearly appears that the parties intended that it should not be complete as a contract, until so written and signed.”
 

 In Fredericks, Tutrix, v. Fasnacht, 30 La. Ann. 117, which was a suit on a contract of lease, the court said:
 

 “Apart from the conduct and declarations of Robert Fasnacht, which are consistent throughout this entire transaction,-it is manifest that there was no contract of lease assented to by him, as lessee of this property. It is elementary in our law that, where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended. The contract is inchoate, incomplete, and it cannot be enforced until it is signed by all the parties. Villere v. Brognier, 3 Mart. (O. S.) 349; Des Boulets v. Gravier, 1 Mart. (N. S.) 421, 422; Bloeker v. Tillman, 4 La. 80.”
 

 In Laroussini v. Werlein, 52 La. Ann. 424, 27 So. 89, 78 Am. St. Rep. 350, which was a suit to enforce a verbal contract of lease, a written lease having been agreed to, which was intended to be substantially in renewal of an existing lease on the same property, though for a different amount, the court, after differentiating those instances in which there is no intention to reduce the contract to writing, or where the intention so to reduce it is made by a subsequent agreement, which is not complied with, from those instances in which it is agreed in the negotiations to enter into the contract to reduce it to writing, said:
 

 “But if, when a verbal contract of lease is agreed on, it is understood, contemplated, and intended that it should be reduced to writing, that there should be a written lease, that the written lease should take the place of and stand for what has been agreed on verbally in respect to the leasing of the property, then, until the writing is drawn up and signed, the contract is inchoate, incomplete, and either party, before signing, may recant, retract, recede, withdraw, decline to go further, refuse to consummate.”
 

 In Ferre Canal Co., Limited, v. Burgin, 106 La. 309, 30 So. 863, which was a suit on an alleged verbal contract to supply a rice farmer with water for his rent, in which it appeared that it was the intention of the parties to reduce the contract to writing, and where it appeared that the defendant failed or refused to sign the contract when it was presented to him for signature, though the water was being furnished him, the court held, to quote the syllabus, which correctly reflects the ruling made, that:
 

 
 *481
 
 “The agreement of parties that the contract shall be reduced to writing is a part of the contract, and, until fulfilled, the contract itself is incomplete.”
 

 The rule that a contract is not complete until» it is reduced to writing and signed, where it is agreed in the negotiations leading up to it that it shall be so reduced and signed, and that until then either party may withdraw, was approved and applied in Timken v. Wisner Estates, Inc., 153 La. 262, 95 So. 711.
 

 We do not find that the ruling in Kaplan v. Whitworth, 116 La. 337, 40 So. 723, is in conflict with, or that it modifies, this rule. It was there held that:
 

 “The execution of a licit future contract, whereof all the terms are fixed, may be the subject of a present contract.”
 

 This ruling presupposes that the “present contract” has been made complete by the reduction of it to writing, where such is necessary by law, or is stipulated in the negotiations leading up to it. Where there is no such present contract, the ruling in that case, of course, is not applicable, and there is no such present contract here.
 

 Our conclusion is that, while the exact point here presented may be said to have been left undecided in Des Boulets v. Gravier, supra, and while a different rule was announced in Montague v. Weil & Bro., supra, the rule in this state is that, where the understanding of the parties is that their contract shall be reduced to writing, the reduction to writing is necessary to the perfection of the contract, and that this is the rule, whether all the terms of the contract havé been verbally agreed to or not.
 

 So finding, our opinion is that the exception of no cause of action was properly sustained.
 

 The judgment is therefore affirmed.
 

 ST. PAUL, J., dissents.