HERGET, Judge.
City Glass and Mirror Company, a commercial partnership, instituted this suit against Charles Carter and Company, Incorporated seeking to recover damages against Defendant for the alleged breach of a subcontract to supply glassworlc for the Westmoreland Shopping Center in Baton Rouge, Louisiana, the construction of which had been undertaken by Defendant as general contractor. Damages claimed by Plaintiff amounting to $1,500 allegedly sustained, resulting from said cancellation, are for: (1) loss of profit; and (2) loss on the purchase of materials for use in the job. Defendant denied the allegations of Plaintiff’s petition and reconvened for the sum of $4,000, the amount of damages allegedly incurred as a result of the delays caused by Plaintiff in failing to comply with the terms of the contract prior to its cancellation.
Judgment was rendered by the trial Court dismissing Plaintiff’s suit and Defendant’s reconventional demand, and from the judgment dismissing its suit Plaintiff appeals to this Court.
From the record it appears that Defendant was bidding on the Westmoreland job and in order to make such bid it became necessary to obtain prices from subcontractors, including Plaintiff, for such portions of the contract which would be subcontracted. Negotiations were had between Plaintiff and Defendant and it appears that Defendant, on representations from Plaintiff, included in his general bid for the contract the sum of $9,000 as the price to be paid by it to Plaintiff for the performance of the glasswork required in the building. Plaintiff maintains that a definite contract was entered into by and between Plaintiff and Defendant for the performance of the services and because of the breach of same damages which it suffered are recoverable. Indeed, in paragraph II of its petition, Plaintiff alleges:
“That petitioner and defendant, Charles Carter & Company, Inc., entered into a written subcontract, dated October 17, 1958, identified by the number WSC-SC-5, which subcontract is annexed hereto and made a part hereof as if written herein in extenso, whereby City Glass & Mirror Company, in consideration for the *242 contract price of $9,000.00, agreed to furnish and pay for all labor, services, and materials and perform all of the work necessary for the completion of that part of the Contract Documents as follows: the necessary glass, glazing, extruded aluminum and aluminum frame doors and store fronts in the addition to the Westmoreland Shopping Center, located in the City of Baton Rouge, State of Louisiana.”
Following acceptance by the owners of Defendant’s bid for the general contract in October of 1958, Defendant forwarded to Plaintiff a written contract dated October 17, 1958 embodying the contract to be undertaken by the subcontractor, Plaintiff, for the “necessary glass, glazing, extruded aluminum and aluminum frame doors and store fronts” for the price of $9,000.
On October 31, 1958 Defendant addressed a letter to Plaintiff, admittedly received by it and offered in evidence, in which Plaintiff was advised:
“Re: Westmoreland Shopping Center “Baton Rouge, Louisiana
“Gentlemen:
“On checking our files we find that we have not received a signed copy of our sub-contract to you on the above project.
“Would you please attend to this at your very earliest convenience.”
On November 3, 1958 a letter was addressed to Plaintiff by Defendant, admittedly received by Plaintiff which was offered in evidence, in which Plaintiff was requested to furnish immediately details of work to be undertaken by Plaintiff to be submitted to the architects for approval.
On November 14, 1958 Plaintiff was advised by letter from Defendant that it had not as yet received the signed subcontract to be undertaken by Plaintiff on the West-moreland Shopping Center, and further that it had not received any details of the drawings for the architects approval.
On November 20, 1958 Defendant addressed a letter to Plaintiff, admittedly received by Plaintiff and which was offered in evidence, wherein Plaintiff was advised:
“Re: Westmoreland Shopping Center “Baton Rouge, Louisiana
“Gentlemen:
“As we advised you in our letter of October 31, 1958, we have not as yet received a signed copy of our subcontract to you on the above project. Since yours i-s the only contract not returned as of this date, we urgently request that you attend to this so that we might close out the file on this matter.”
On November 28, 1958 Defendant advised Plaintiff by registered return receipt requested mail, the following:
“Re: Westmoreland Shopping Center “Baton Rouge, Louisiana
“Gentlemen:
“This is to advise you that we are forced to cancel your sub-contract No. WSC-SC-5 for the glass, glazing, extruded aluminum and aluminum frame doors and store fronts on the above mentioned project. Please return the two copies of this contract to us at your earliest convenience so that we may close our files.
“We regret to take this action but as you know you have not appeared interested in doing this project for us. We have awarded this work to another firm.”
On December 1, 1958 Plaintiff advised Defendant by letter, as follows:
“Re: Westmoreland Shopping Center “Baton Rouge, La.
“Gentlemen:
“We are pleased to return herewith signed copy of your contract on the above job covering glass and glazing.
*243 “Shop details for the above job are being prepared at present and will be in your hands no later than Friday of this week.”
Upon receipt of the enclosure referred to in letter of Plaintiff to Defendant of December 1, 1958, Defendant returned to Plaintiff the details and drawing submitted therein.
On the trial of the case the explanation given by Plaintiff for not returning the signed contract to Defendant was that because of changes between the plans and specification on which bids are submitted and the plans and specifications actually utilized for the erection of the building which are made by the architect at times, Plaintiff was desirous of checking the final plans with the written contract of date October 17, 1958 submitted by Defendant prior to the execution of the contract. ■
It is apparent from the testimony that any agreement for the work to be undertaken by Plaintiff contemplated the reduction of same to writing. Though under the law such an undertaking may be by verbal contract, if the agreement of the parties is that the acceptance of the contract is not consummated until the signing of a written contract embodying the agreement, until such written contract is signed the consent necessary to give validity to the contract under LSA-C.C. Article 1798 is not shown. Accordingly, Plaintiff, not having accepted the written contract of date October 17 by signing same prior to receipt of notification of cancellation by Defendant, had no contract with Defendant for the performance of the contract and consequently Defendant is not liable to Plaintiff for the breach thereof. We are of the opinion that the question involved was specifically answered in the case of Breaux Brothers Construction Co. v. Associated Contractors, 226 La. 720, 77 So.2d 17, at page 20, wherein the Court said:
“As far back as the year 1814 this court held that, where it has been agreed between the parties that an agreement shall be reduced to writing, the contract is not complete until it is written and signed by all the parties. Villere v. Brognier, 3 Mart., O.S., 326.
“In Fredericks v. Fasnacht, 30 La. Ann. 117, this court said:
“ ‘ * * * It is elementary in our lazv, that zvhere the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the zvriting is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete, and it can not be enforced until it is signed by all of the parties. Villere v. Brognier, 3 Mart., O.S., 326, 349; Des Boulets v. Gravier, 1 Mart., N.S., 420, 421, 422; Bloeker v. Tillman, 4 La. 77, 80.’
“This principle of law has been consistently adhered to by this court ever since. See Evans v. Dudley Lumber Co., Inc., 164 La. 472, 114 So. 101, and authorities cited therein.
“Since the parties in the instant case intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them. Therefore, even if all of the terms of the alleged contract between plaintiff and defendant had been verbally agreed upon, no valid contract *244 would have existed between the parties because this case falls within the second class of cases discussed in Fredericks v. Fasnacht, supra, and therefore in this case the final consent of the parties was suspended until such time as the contract should be reduced to writing and signed by all the parties.
“Therefore, because the element of consent is lacking for the reasons set out above, it is obvious that plaintiff has not established the existence of a valid contract under Article 1779 of the Civil Code, and consequently cannot recover.”
For these reasons, the judgment of the trial Court is affirmed.