## No. 5402.

### J. H. MONTAGUE ET AL. vs. WEIL & BRO.

Any former member of a dissolved commercial firm may be brought into court by a firm creditor and condemned for a social debt, contracted while he was a member, on a citation addressed to the *firm*, but served personally on him ; when the citation is accompanied by a certified copy of the petition, in which the creditor prays for a judgment against *each* former member of the firm *in solido*.

The reduction of an agreement to writing, signed by the parties, is not necessary to its perfection as a contract, unless it clearly appears that the parties intended that it should not be complete as a contract, until so written and signed.

Whoever by word, or act, purposely persuades another that a certain state of things exists, which induces him to act so as to alter his previous position, is estopped from denying the existence of that state of things.

APPEAL from the Sixth District Court, Parish of Orleans. *Saucier*, J.

*Finney & Miller* for plaintiff and appellee.

*J. C. Egan* for defendants.

Montague et al. vs. Weil & Bro.

The opinion of the court on the original hearing was delivered by MANNING C. J. and on rehearing by SPENCER J.

The defendants in August 1873 leased a store from plaintiffs for one year, commencing from first of November following at seventy-five dollars per month, payable at the end of each month. They were occupying the store under a former lease at the time the new lease, or agreement to lease, was made, and the rental of the old lease, which expired on thirty-first October was one hundred dollars per month. The agreement was that the store should be whitewashed, and a written lease and rent-notes were to be signed. The first of these stipulations was performed by plaintiffs, and they also had prepared the necessary writings for the signature of the defendants, which were presented to them. Objection was made by them because of an opening in the upper part of a wall, and this was closed to comply with their wishes, and the lease and notes again presented to them for signature. They expressed their willingness to sign them, but deferred doing it from time to time, giving unsatisfactory excuses for this omission or delay in signing, but never refusing, on the contrary always promising to execute the lease and sign the notes.

On the 10th. of October, the plaintiffs' agent addressed a letter to the defendants, reciting at length the agreement, and his subsequent efforts to obtain the defendants' signature to the lease and notes, recalling to their recollection their promises to sign, their delays, and informing them of his purpose to enforce the contract. They promised many times, and to several persons to comply with their agreement. The occupant of the adjoining store was requested by the plaintiffs' agent to take the matter in hand, and he says that Samuel Weil, one of the firm, constantly declared his intention to sign the papers, and talked with him about the lease fifty times. It is indubitably established that the defendants made the agreement to lease, and afterwards repeatedly expressed their willingness and intention to perfect it by executing the lease and notes. But they never did execute them.

They continued however in the occupancy of the house, and during the first week of December paid the rent for November under the new lease. After this payment of the November rent, the plaintiffs' agent inquired of Samuel Weil again if he had executed the lease, and the latter promised to do it the next day.

On the 15th. of December the plaintiffs' agent received a written notice that Samuel Weil, successor to Weil & Bro. would not keep the storehouse longer than first proximo, and this was signed S. Weil per M. G. Weil. On the 26th. of that month plaintiffs brought this suit to recover the rent agreed on in this new lease, and provisionally seized the contents of the store. The sum sued for is $825 with interest on the monthly instalments from their maturities.

There is no dispute that the occurrences have been correctly detailed. Upon one matter alone is there any difference, and that is whether notice of the dissolution of the firm was ever given to plaintiffs. But the defendants deny any liability, because the lease was not complete until they had signed it. There was an agreement to lease upon specified terms, and the lease was to be signed, but this agreement was never consummated. The lease never was signed. It is also urged in defence that the firm of Weil & Bro. was dissolved on 25th. October 1873, six days before the lease was to begin, and notice of its dissolution was published in a newspaper on the 31st., and therefore the firm could not be held responsible on the lease, and that it has paid all the rent due up to the time of its dissolution. It was also urged by way of exception that the firm could not be sued after its dissolution by service on one of its members, and that no judgment could be rendered against the member who was cited, because the citation was addressed to the firm.

The defence is not good, and first as to the exception. Since the case of Kearney vs. Fenner 14 Annual 870. it has not been disputed that service of citation upon one partner of a commercial firm was sufficient, and that a judgment against the firm was properly rendered upon such citation. It is also true that a commercial partnership exists for the purpose of its liquidation, after it has been dissolved, and the former partners may be sued in the Court of the firm domicil on the liabilities of the firm, and in a late case this doctrine was extended so as to permit them to be brought in by attachment, if they were non-residents. Lobdell vs. Bushnell, 24 Annual, 295.

A commercial firm is not permitted to escape its obligations by a dissolution, nor will such dissolution oppose any obstacle to its creditors enforcing their obligations in the court where they were enforceable during the existence of the firm. Troplong remarks this as an anomaly ;— L'état d'une Société de commerce pendant sa liquidation présente de singulières anomalies. Cette Société est dissoute, mais dans l'usage du commerce elle est censée subsister encore pour se liquider. Elle a pris fin pour commerce pour agir et entreprendre ; il semble qu'elle se prolongue en quelque sorte, pour regler le passé et mettre ordre à ces affaires. C'est cette idée qu' exprime la formule usitée dans les circulaires des négocians. La Société ne subsiste plus que pour sa liquidation. Traité de la Société, 2. to No. 1004.

In a very early case, Des Boulets vs. Gravier, 1. N. S. 420. this Court approvingly quotes from Pothier the general rule touching the necessity of reducing the agreement to writing and thus states it ;— it must appear to be the intention of the parties to make the perfection of the agreement depend on the writing, for if it was merely contem-

plated to secure a more authentic mode of proof, then neither party can pretend the contract was not complete.   Zacharie formulates the doctrine thus ;—La clause par laquelle les parties conviennent de consigner leur convention dans un acte sous seing privé, ou de la faire constater par acte notarié n'en fait pas dependre l'existence de laccomplissement de ces formalitiés, à moins qu'il ne résulte clairement des termes mêmes de cette clause ou des inconstances, que telle a été l'intention des parties.   Une clause de cette nature doit, en général, être consideréè, comme ayant uniquement pour objet d'assurer la preuve de la convention à laquelle elle se rapporte.   2 to 466 note.

The intention of the parties here nowhere appears to be to make the existence of the lease depend upon its formal confection, and the signing.   On the contrary the payment of the November rent under that lease is evidence that they regarded it as complete, for if the store was held under the old lease, a hundred dollars should have been paid instead of seventy-five.   The defendants, both by words and conduct, induced the plaintiffs to believe that they regarded the new lease as binding and complete, and it is a sound principle of law, as well as of morals, that where one by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.   Marsh vs. Smith, 5 Rob. 523.

The answer of the defendants to this is, that the firm of Weil & Brother did not pay the November rent, nor continue occupying the house, but only Samuel Weil, one of the former members of that firm, and that notice of the dissolution of the firm was brought home to plaintiffs by publication in a newspaper, as well as by personal notice. The agent of the plaintiffs says he did not receive personal notice of the dissolution, and never heard of it until late in the year, and we believe him.   It was said in oral argument by the defendants' counsel that the plaintiffs were affected with notice by the newspaper publication, and that the rule is that to those who had had dealings with a firm, a newspaper publication of dissolution was all that was required, and a special notice was required only by others.   The rule is just the reverse.   Special notice of the dissolution should be given to those who have had dealings with the firm.

Certainly the plaintiffs were not told that the firm had ceased to occupy the house during November and up to the middle of December, when the defendant were often applied to to sign the lease, and these different applications afforded convenient and appropriate opportunities for such information to be given.   Nor does the payment of the rent for November by Samuel Weil alter the relative positions of

the parties. He was one of the firm, and its active member, and repre-
sented it.

After the institution of the suit, the rent for December was paid,
and is so considered in the judgment, and in March the plaintiffs rented
the house to other parties for the benefit of the defendants and for the
remainder of the term of their lease. This rental has also been paid,
and plaintiffs concede that credit should be allowed for these sums.

It is therefore ordered, adjudged, and decreed that the judgment of
the lower court is affirmed, subject to the credit of fifty dollars on the
first of April 1874, and same sum on the first of each succeeding month
up to and including the first of November of that year, and that the
plaintiffs have and recover their costs of the defendants.

---

## On Rehearing.

The opinion of the court was delivered by

Spencer, J. The facts of this case are in the main fully stated in
our former opinion and need not here be repeated.

One point urged by the defendant, however, did not receive any
special mention therein. To wit: That in executing the writ of pro-
visional seizure it is alleged that the sheriff did not simply seize the
effects in the store belonging to defendants, but actually took posses-
sion of the leased building and its keys, and excluded the defendant
from the premises. It is claimed that this was an act for which plain-
tiffs are responsible, and amounted to a dissolution of the lease. There
can be no doubt that if such an act were done by the lessor that it
would, at the option of lessee, dissolve the lease. But it is not pre-
tended that the sheriff had any mission, either by law or in fact, from
the plaintiffs to do this act. The sheriff's return shows only a seizure
of the effects in the house. One of the defendants' clerks swears that
the sheriff took possession of the house, keys, and every thing in the
house.

There is no proof that plaintiffs even knew of this fact, if fact it be.
They were not informed thereof by the sheriff's return on the writ, or
by any act or word on the part of defendants.

This silence on the part of defendant, especially when taken in con-
nection with the formal notice of the fifteenth of December, of his
intention to abandon the leased premises on the first of January, prox-
imo, makes this objection come with very bad grace from him. The
seizure was made on the twenty-sixth of December, only four days
*before* the time *he had fixed* for his abandonment, and we regard him
as estopped from setting up that the lease was dissolved by a pretended

exclusion from a house which he had formally given notice he intended to quit.

The only serious question involved is that raised as to the sufficiency of the citation. It was addressed "to Weil & Bro.," and served in person on Samuel Weil, against whom alone judgment was rendered. The question is, therefore, whether, *after* the dissolution of the firm *in fact,* but *before any special notice* thereof to plaintiffs who were entitled to such notice, a citation addressed *to the firm,* and served on a member in person, will have the effect of a legal citation to the member so served ?

The question is not free from difficulty. We have lately had occasion, in the case of Ranlett vs. Collier White Lead Company, to examine and review the authorities upon the subject of the proper mode and place of citing the members of a dissolved commercial partnership, in a suit for a debt of the partnership. We then held that each partner must be separately served with citation, and could not be cited to appear in such suit out of the place of his domicile.

But it is urged by plaintiffs that this rule does not apply until the creditor of the partnership has had legal notice of the dissolution, and that until such notice, the firm, *quoad* such creditor, continues to exist. The contrary was held by this Court in Brashear vs. Dwight, 2 An. 404, when it was said : " It is satisfactorily proved that before the institution of this suit the partnership of Bemiss, Brashear & Co. had been dissolved, and the dissolution published in the newspaper of the village where it had been carried on. It is contended that the plaintiffs in the suit were in the habit of trading with the firm, and that notice of the dissolution should have been brought home to them otherwise than by publications in the newspapers.

The ground would be well taken if the object of the plaintiff had been to make the defendant liable in a direct action against him *for dealings had with the firm after its alleged dissolution,* but it does not affect *the manner of bringing the partners of a dissolved partnership into Court."*

We think, therefore, that the question before us is not affected by the fact that the creditor has or has not had notice of the dissolution; and eliminating this there remains the simple question, whether a citation addressed to the dissolved partnership, and served on one of the partners, is a good citation of that partner?

It must be borne in mind that this was served on Samuel Weil in person, with the citation "to Weil & Bro.," a certified copy of plaintiff's petition, in which it was specifically alleged and set forth that the firm of Weil & Bro. was composed of Samuel Weil and M. Weil, and in which there was a prayer for judgment against the firm and against

*each member* thereof *in solido.* The object and purpose of citation is notice. Under the facts of this case it is not possible that Samuel Weil could have been misled as to the identity of himself as a party defendant in such cause. The citation to Weil & Bro., accompanied by the copy of petition, and served on Samuel Weil personally, sufficiently designated him, and was a substantial compliance with art. 179 of the Code of Practice, which provides that the citation "must mention the name of the defendant to whom it is addressed."

We think this case comes within the purview of the doctrine held by the courts of France, under their code of procedure which is very similar to ours. The rule is thus stated in Copier vs. Despus, Cassation, twenty-third of November, 1836: "Les erreurs ou omission dans un exploit n'entrement pas nullité toutes les fois que cet exploit, ou les pièces qui l'accompagnent, renferment des énonciations qui peuvent reparer ces erreurs ou omissions."

On the other points involved in this case we adhere to the views expressed in our former opinion, and see no reason to change the conclusions therein reached. We think this case differs from that of Avandano vs. Arthur, just decided, in this, that Arthur at all times refused to sign, while in this defendants at all times promised to sign the lease; over and over recognizing its existence. So the parties clearly did not contemplate the writing as the completion of their agreement, but only as its evidence.

It is, therefore, ordered that the decree heretofore rendered by this court remain undisturbed.