Statement of the Case.
NICHOLLS, C. J.
The plaintiff alleged that Charles L. Smith and his wife are indebted to her in solido in the sum of $5,000. She asked judgment against them in solido for that amount. She also asked judgment against Charles L. Smith for the possession of a sewing machine, or its value, .$15, and for the restitution of $35, which she avers she erroneously paid to him.
She alleged: That in April, 1901, she agreed to rent from defendants a certain house in the town of Covington, provided certain repairs were made thereon, and the house was put in condition for use as a boarding house. That they failed to comply with their contract as agreed upon. That about the 15th of April they induced her to take possession of the house under the promise to put the house in proper condition in a few days. That she had never rented the house, never having signed the written lease signed by Charles L. Smith, which she annexed to her petition, because he had not complied with his obligations, in consequence of which she left the property, being under no legal obligation to make additions or repairs to a building which she had not rented, but which Smith had agreed to make as a condition before she would rent. That about the 15th of April he induced her to advance $35 to him, which she did, fully believing he would in a few days make the house habitable, and in condition to be used for the purpose for which it was to be rented. That about the 15th of May, the house being still incomplete, and defendant continuing to fail to comply with his contract of lease, she withdrew from the property. That she left therein a sewing machine, worth $40, and floor matting, worth $15, which she had sold to another person, of which articles defendant had taken possession, and had refused to deliver to her vendee, or to allow to be removed from the house.
That the two defendants had damaged her to the amount of $5,000 by making verbal defamatory charges against her in connection with the lease of said house and the circumstances under which she had left it and the town of Covington, and also by making false, libelous charges against her in regard to the same matters in two letters, which she annexed to her petition, which had been written by Mrs. Sarah Smith, with the authorization and consent of her husband, to two persons in the city of New Orleans.
The defendants, after pleading the general igsue, averred: That in April, 1901, plaintiff called on them in Covington, and in the-interview with them stated that she had heard that they had a house which they would rent or sell. That- the defendant Charles L. Smith then entered into negotiations with her, and it was agreed between them that she rented a house for a period of six months at a rental of $35 per month, payable in advance, and that she should have the privilege of purchasing the same at the expiration of that time at the price of $3,500. That she made certain representations at that time, which are set out, and that she would purchase the house at the time stated at that price; that in pursuance to such agreement a written contract and lease (which they annexed to their answer) was drawn up by plaintiff’s attorney, and was approved and signed by Charles L. Smith, and delivered to plaintiff, to be signed and returned to him.
That he several times requested her to-sign and return the contract, but she failed to do so under various excuses.
That as soon as defendant signed and delivered the contract to plaintiff he immediately made all the repairs to the house that had been agreed to and were necessary as rapidly as it was possible for him to do so, and put a quantity of additional furniture in the house. That plaintiff asserted her entire-satisfaction with the contract and lease, and with the action of defendant in carrying out the same, and as soon as she received the signed instrument she paid him the sum of $35 for one month’s rent in advance, as agreed on in the lease, and went into possession of the *443 house under the lease, and opened and conducted a boarding house therein until about the 14th of May. That on or about that day she attempted to sell the matting and sewing machine mentioned in the petition, and other articles in the house, secretly, and without the knowledge of defendants, and abandoned the house, and left the town of Covington secretly and hurriedly, and without notifying defendants, and without their knowledge. That the matting and sewing machine were left in the house by plaintiff, and were subject to a lessor’s lien and privilege in favor of defendants for rent. They specially denied that they had charged or asserted that plaintiff was dishonest, and had acted in a dishonorable and disreputable manner, and they averred that the letters written by the defendant Mrs. Smith were written in good faith to persons to whom plaintiff had referred them as guarantors of her good character and financial standing, and for the purpose only of fairly stating defendants’ actions to such persons.
They averred that it was true, as stated, that before abandoning the house plaintiff had sold, without right or authority, to Bickham Bros., of Covington, a bowl and pitcher belonging to defendants.
Assuming the position of plaintiff in reconvention, the defendant Charles L. Smith alleged that plaintiff was indebted to him in the sum of $175 for rent of the house referred to from the 15th of May to the 15th of November, 1901, at the rate of $35 a month, as agreed and contracted between the parties, and for this amount he prayed judgment, with recognition of lessor’s privilege on the matting, the sewing machine, and any other property left in the premises by the plaintiff.
The district court rendered judgment rejecting plaintiff’s demand, and rendered a judgment also in favor of defendant Charles L. Smith against the lilaintiff on his demand in reconvention for rent of the house referred to in the pleadings for the sum of $70.
Plaintiff appealed.
Opinion.
The district judge, under the evidence, held that: “Plaintiff was a tenant of the defendant. She suddenly left the house, without notice to the lessor. The wife of the defendant wrote several letters to parties in New Orleans, stating, in substance, the following charges: That the plaintiff had violated a contract of lease without any warning, and had taken all of her property out of the house, or sold it; that she gave the key of the house to a third person, and cautioned her not to tell her husband of her intended departure; that she took a bowl and pitcher belonging to the lessor, and that she left owing several of the stores. * * * The testimony satisfies me that the plaintiff did lease the property of the defendant for six months; that she gave no notice of her intended departure to the lessor, but, on the contrary, concealed the fact, and when she saw his brother in the train she deceived him as to her intentions. She did go away leaving several debts unpaid, and some of them were not paid until she had employed a lawyer to sue defendant. That she took the bowl and pitcher, or rather that she caused it to be taken, is also true. It is also true the taking was done by mistake. Practically all the defendants’ charges were shown to be true at the time they were made. Considering that the lessor suddenly found his property abandoned by a party who had agreed to lease it for six months, and also found that it had been stripped of the property of the tenant, that the tenant had concealed her departure, and had asked Mr. Warren to conceal it, it must be conceded that the defendants had great provocation for the letters and the remarks. * * * Without any justification, she [the plaintiff] abandoned the property, and acted in a very peculiar manner.”
We agree with the district judge that the parties entered into a completed contract of lease of the house, and that plaintiff was in possession of the house as tenant when she left the premises, though we think she was under the imxjression that until she signed the. written act of lease she was under no obligations to the defendant other than for the rent for the month which she had paid in advance, and that she left the premises in the manner she did under that view of the situation to avoid what she thought might be disagreeable interviews between the defendant and herself. There is no doubt that defendant was slow in making the alterations in the premises and the repairs thereto which *445 lie had agreed to make. These delays resulted from circumstances which he could not himself have well controlled, but of which plaintiff could possibly have taken legal advantage had she placed him in default. Instead of doing this, she assumed that these delays had of themselves relieved her of all'obligations, and in consequence of that belief she left the premises under circumstances such as to place her in an equivocal position. We do not think she is chargeable with intended wrongdoing. The amounts due by her to storekeepers in Covington when she left that place were trifling in amount, and we have no reason to suppose that she proposed avoiding payment of the same by leaving in the manner she did. The disposal by her of the bowl and pitcher belonging to the defendant was the result of a mistake, as stated by the district judge. Matters which we understand and appreciate under the light of testimony presented, however, a very different appearance to the defendants at the time when the letters referred to were written. Though the letters stated facts which were substantially true, the deductions which were drawn from them were, we think, incorrect. We think it due to the plaintiff to say this much. On the other hand, we think plaintiff’s charge against the defendants of having maliciously slandered and libeled her is without foundation. The letters were written to an intimate friend of the plaintiff, and to a gentleman who had acted as her attorney in writing up the act of lease. We think, from an examination of these letters, that the purpose of their being written was rather to excuse or set themselves right before parties to whom they believed the plaintiff would make statements as to these transactions prejudicial to themselves, and which might result in a lawsuit against them, than to do the plaintiff any harm.
The letter written to plaintiff’s attorney commenced as follows:
“Dear Sir:
“It is repugnant to me to be compelled to explain or justify myself and husband to you by letter, but as you have been named very often in connection with a business transaction between Mrs. E. O. Coffee, myself, and husband, I am compelled to do so. There is always two sides to a story, and I’ll make mine as brief as possible. Mrs. Coffee has named you as her attorney, and claims that you attend to all of her affairs.” The writer then proceeded to give her version of matters between herself and her husband and the plaintiff, and then, after referring to a Mr. Warren, who had had some connection touching the same with the parties, she said, “He [Mr. Warren] threatened us that you would sue us, not him.”
In the other letter, after giving her version of the transactions between Mrs. Coffee and herself and husband, the writer said: “I wrote to Mr. G. yesterday, as she [Mrs. Coffee] named him as her attorney. I have no idea of entering suit, but I propose to hold the matting on the room for this month’s rent, as the law will sustain me, lease or no lease. * * * We have always acted honorably, and I refer you to Mr. B., whom I suppose you know.”
We see no ground for reversing the judgment appealed from, and it is hereby affirmed.