## JOHNSON v. WILLIAMS et al.
### No. 4553.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Rehearing Denied July 15, 1933.

Lee, Gilmer & Lee, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellees.

DREW, Judge.

The lower court rendered a written opinion in this case which correctly states and determines the issues in the case. The opinion is as follows:

"Plaintiff and defendant Ray Williams, on January 11, 1927, entered into a written contract under the terms of which plaintiff agreed to lease to defendant certain property. All the terms of the contemplated lease were set forth. Lessee was to have the right to enter the premises at once and make alterations and repairs which he did. The contract contains the following clause: 'Lessor agrees that he will execute a lease on said premises under the above terms and conditions in favor of lessee or in favor of a corporation to be organized by lessee and his associates for the purpose of carrying on said business.'

"Ray Williams organized the Blossom Shop; the above-mentioned contract was assigned to the corporation for a consideration, and in the transfer the agreement was termed 'a contract of lease.' The Blossom Shop occupied the premises for several years, paying the stipulated rental, during which time neither side ever demanded that any other writing be signed. Finally the Blossom Shop moved out before the expiration of the time mentioned in the agreement.

"Plaintiff has brought this suit against Ray Williams and the Blossom Shop for damages, the measure of which is the loss of rent for the unexpired portion of the term.

"It may be well to state at this time that the present suit is admittedly one for damages for the alleged violation of a contract of lease rather than one for damages for failure to enter into a contract of lease based on a former written contract to lease.

"The contentions of plaintiff may be summarized: 'That where the contracting parties have entered into a present binding contract for a lease, the terms, conditions, stipulations and provisions of which have been fully agreed upon, that such a contract in the absence of an expressed intention on the part of the contracting parties to the contrary, constitutes a contract of lease, particularly where, as in the present case, (a) the intention of the parties nowhere appears in said instrument to make the execution of the lease to depend upon its formal confection and signing, and (b) the terms and provisions of said agreement have been strictly carried out by the contracting parties over a long period of time.'

"Now, taking up the jurisprudence on which this contention is based, we find the case of Montague v. Weil & Bro., 30 La. Ann. 50, the syllabus of which reads: 'The reduction of an agreement to writing, signed by the parties, is not necessary to its perfection as a contract, unless it clearly appears that the parties intended that it should not be complete as a contract, until so written and signed.'

"In the body of the case, after quoting from Des Boulets v. Gravier, 1 Mart. (N. S.) 420, the court said: 'The intention of the parties here, nowhere appears to be to make the existence of the lease depend upon its formal confection and signed. On the contrary * * *.' And on rehearing, we find: 'So the parties clearly did not contemplate the writing as the completion of their agreement, but only as its evidence.'

"We think counsel for plaintiff correctly interprets this case when he says: 'The rule

of law announced in the Montague Case, as we appreciate it, is that where the contracting parties have duly entered into a present, binding contract for a lease, which contemplates the execution at some indefinite future period a formal contract of lease, but the existence of said lease is not made to depend upon its formal confection and signing, the contract aforesaid has the same force and effect as if the parties had formally executed the contemplated contract of lease, particularly when possession of the leased premises has been delivered to the lessee and the latter has paid rent and otherwise complied with the terms and provisions of the contract aforesaid.'

"In Coffee v. Smith, 109 La. 440, 33 So. 554, it is said: 'Where a party contracts for a lease of a house and enters into possession of the same and pays a month's rent in advance, it constitutes the relationship of landlord and tenant, though it was in contemplation that after the parties had completed the contract a written agreement should be signed.'

"A reading of the whole case makes it rather difficult to understand what the court intended to hold.

"In Gladney v. Steinau, 149 La. 79, 88 So. 694, the court did not enunciate any general principle of law, but held that in that particular case there was no absolute agreement that the verbal contract of lease should be reduced to writing, but only that either party would sign a written lease if the other party should demand it.

"We do not think the case of Knights of Pythias v. Fishel, 168 La. 1095, 123 So. 724, is an authority for either side in the present case. There the parties entered into a written contract to lease. The lessor prepared a written contract of lease and the lessee refused to sign it. The lessor then sued the lessee for damages for failure to execute a contract of lease, and all the court held was that a contract to lease was a perfectly valid and binding agreement.

"Defendant's counsel admits, for the purpose of this case, that the written agreement was binding, and if plaintiff was suing on it as a contract to lease rather than as a contract of lease, defendants would be held if they were properly put in default.

"The doctrine contrary to that in the Montague Case is set forth in the case of Evans v. Dudley Lumber Co., 164 La. 472, 114 So. 101, the syllabus of which is: 'Where parties' understanding is that contract shall be reduced to writing, reduction to writing is necessary to perfection of contract, whether all terms have been agreed to or not.'

"We quote from the case in extenso as we think same is necessary to fully understand what the court held and the reasons for same:

"'Defendant also contends that the alleged contract, consisting partly of statements in letters and partly of verbal statements, was never consummated, for the reason that the negotiations leading up to it provided that the contract should be a written one, and that, until it was reduced to writing and signed by both parties, either had the right to withdraw. On the other hand it is plaintiff's contention that an agreement between the parties when their minds have met upon all essentials, constitutes a contract between them, and binds them at once, although their agreement contemplates that the contract should be reduced to writing, unless it appears that it was the intention of the parties to be bound only upon the execution of the formal instrument, the burden of showing which is upon the one seeking to show that the contract was never consummated.

"'There can be no question that, when defendant's agent, acting under defendant's instructions, refused to reduce the contract to writing and to sign it, thereby refusing to proceed any further in the matter, plaintiff's consent to the contract was merely verbal, and hence that the agreement had not reached the written form had in view, as disclosed by some of the letters attached to the petition. The question therefore is: did defendant have a legal right to withdraw at that time?

"'In Des Boulets v. Gravier, 1 Mart. (N. S.) 420, which was a suit for the price of a schooner, it was said: "The authorities are express that, if the parties agree that the contract is to be reduced to writing, it is not complete until that writing is made and signed."

"'The court then, in taking up for consideration the contention that the foregoing rule had no application, because the vendee acknowledged that he was in possession of the schooner, said:

"'"We regard this fact of possession, as one of those circumstances which, coupled with others, would have made the sale complete, if there had been no agreement to put in writing. But when that agreement exists, the necessity of complying with it arises from the parties having added that condition to other things required to make a legal contract. No case indeed could occur where the operation of the privilege of law here invoked could be examined, unless the contract was complete, independent of its being reduced to writing, and we cannot distinguish between possession, and consent, and price, and the other circumstances which would make the agreement binding.

"'"Pothier, who states the general rule to be such as it is found in the authorities already referred to, adds that it must appear to be the intention of the parties to make the perfection of the agreement depend on the writing, for, if it was merely contemplated to secure a more authentic mode of proof, then neither party can pretend the contract was

not complete. Pothier, Traite des Obligations, No. 11. Such also appears to be the opinion of Gregorio Lopez, in his commentary on the law of the Partida, already cited, 5, 5, 6. It is unnecessary for us to say whether we are prepared to go the whole length with these commentators, for, taking the rule with the modifications they have made, and testing this case by it, we are brought to the same result as if we pursued the literal expressions of the law."

"'In Montague v. Weil & Brother, 30 La. Ann. 50, which was a suit on a contract of lease, which the defendants had frequently expressed their willingness to sign, but which they did not sign, the lease being a renewal of a preceding one, but for a smaller rental, the court applied the rule from Pothier, stated in the foregoing excerpt, and held, as shown by the syllabus, that: "The reduction of an agreement to writing, signed by the parties, is not necessary to its perfection as a contract, unless it clearly appears that the parties intended that it should not be complete as a contract, until so written and signed."

"'In Fredericks, Tutrix, v. Fasnacht, 30 La. Ann. 117, which was suit on a contract of lease, the court said: "Apart from the conduct and declarations of Robert Fasnacht, which are consistent throughout this entire transaction, it is manifest that there was no contract of lease assented to by him, as lessee of this property. It is elementary in our law that, where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended. The contract is inchoate, incomplete, and it cannot be enforced until it is signed by all the parties. Villere v. Brognier, 3 Mart. (O. S.) 349; Des Boulets v. Gravier, 1 Mart. (N. S.) 421, 422; Bloeker v. Tillman, 4 La. 80."

"'In Laroussini v. Werlein, 52 La. Ann. 424, 27 So. 89, 78 Am. St. Rep. 350, which was a suit to enforce a verbal contract of lease, a written lease having been agreed to, which was intended to be substantially in renewal of an existing lease on the same property, though for a different amount, the court, after differentiating those instances in which there is no intention to reduce the contract to writing, or where the intention so to reduce it is made by a subsequent agreement, which

is not complied with, from those instances in which it is agreed in the negotiations to enter into the contract to reduce it to writing, said: "But if, when a verbal contract of lease is agreed on, it is understood, contemplated, and intended that it should be reduced to writing, that there should be a written lease, that the written lease should take the place of and stand for what has been agreed on verbally in respect to the leasing of the property, then, until the writing is drawn up and signed, the contract is inchoate, incomplete, and either party, before signing, may recant, retract, recede, withdraw, decline to go further, refuse to consummate."

"'In Ferre Canal Co., Ltd., v. Burgin, 106 La. 309, 30 So. 863, which was a suit on an alleged verbal contract to supply a rice farmer with water for his rent, in which it appeared that it was the intention of the parties to reduce the contract to writing, and where it appeared that the defendant failed or refused to sign the contract when it was presented to him for signature, though the water was being furnished him, the courts held, to quote the syllabus, which correctly reflects the ruling made, that: "The agreement of parties that the contract shall be reduced to writing is a part of the contract, and, until fulfilled, the contract itself is incomplete."

"'The rule that a contract is not complete until it is reduced to writing and signed, where it is agreed in the negotiations leading up to it that it shall be so reduced and signed, and that until then either party may withdraw, was approved and applied in Timken v. Wisner Estates, Inc., 153 La. 262, 95 So. 711.

"'We do not find that the ruling in Kaplan v. Whitworth, 116 La. 337, 40 So. 723, is in conflict with, or that it modified, this rule. It was there held that: "The execution of a licit future contract, whereof all the terms are fixed, may be the subject of a present contract."

"'This ruling presupposes that the "present contract" has been made complete by the reduction of it to writing, where such is necessary by law, or is stipulated in the negotiations leading up to it. Where there is no such present contract, the ruling in that case, is not applicable, and there is no such present contract here.

"'Our conclusion is that, while the exact point here presented may be said to have been left undecided in Des Boulets v. Gravier, supra, and while a different rule was announced in Montague v. Weil & Brother, supra, the rule in this state is that, where the understanding of the parties is that their contract shall be reduced to writing, the reduction to writing is necessary to the perfection of the contract, and that this is the rule, whether all the terms of the contract have been verbally agreed to or not.'

"We think the Montague Case is overruled by the Evans Case, for whatever one may think as to what was held in the Montague

Case and the Evans Case, the court itself plainly considered that the two cases announced 'contrary doctrines.'

"We realize that the present case does not present any question of reducing a verbal agreement to writing, or any question of the validity of an agreement, but the reasoning contained in the quoted cases is applicable to the present case.

■ "When the parties drew up and signed the written contract *to* lease, they did not know whether Ray Williams or some future corporation was going to be the lessee, so they drew up a valid contract to lease leaving something to be done in the future. Until this was done there was no contract of lease, but only a valid and enforceable contract to lease.

"Leaving out of consideration other defenses which we do not discuss, we would follow the Montague Case and give plaintiff judgment, if it were not for the much later Evans Case, which in our opinion has overruled the Montague Case.

"We therefore think the demands of plaintiff should be rejected, and it is so ordered.
"T. F. Bell, Judge."

We have adopted this as the opinion of this court, and it therefore follows that the judgment of the lower court is affirmed, with costs.

MILLS, J., recused.