521 So.2d 414 (1988)
Dr. John ERNST, III
v.
Bryan BASSETT, D/B/A Bassett Classic Restoration.
No. 87-CA-535.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
*415 William Bassett, Jr., Metairie, for defendant/appellant.
Robert H. Matthews, New Orleans, for plaintiff/appellee.
Sidney J. Angelle, Jeanne A. Lazarre, Metairie, for defendant/appellee in Reconvention.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
WICKER, Judge.
This appeal arises from a suit filed on behalf of Dr. John Ernst, III (Dr. Ernst) against Bryan Bassett d/b/a Bassett Classic Restoration (Bassett) for failure to restore a 1956 Bentley in a workmanlike manner. Bassett reconvened seeking damages for defamation. The trial court rendered judgment in favor of Dr. Ernst on the main demand in the sum of $6,437.46 plus interest and costs. The judgment was silent as to the reconventional demand. Bassett now appeals. We affirm.
PROCEDURAL HISTORY AND MOTION TO DISMISS:
On May 7, 1987 a motion and order for suspensive appeal was filed on behalf of Brian Bassett d/b/a Bassett Classic Restoration (Bassett). The appeal is of the April 1, 1987 judgment.
On April 12, 1987 a motion and order for an amendment of the April 1, 1987 judgment was filed on behalf of Dr. John Ernst (Ernst). Ernst noted in the motion that the April 1, 1987 judgment omitted a ruling on the reconventional demand filed on behalf of Bassett. He further noted that the trial judge had granted a directed verdict in favor of Ernst on the reconventional demand at the conclusion of trial, finding that Bassett failed to prove damages on his defamation claim.
On April 28, 1987 the trial judge amended the April 1, 1987 judgment to add the following paragraph:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, Brian Bassett, d/b/a Bassett Classic Restoration, and against defendant in reconvention, Dr. John Ernst, III, in the full sum of ZERO ($0) DOLLARS together with legal interest from date of judicial demand.
L.S.A.-C.C.P. Art. 1951 provides that:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
Since the amendment of April 28, 1987 is substantive in that it is a ruling on the merits of the reconventional demand, the amendment of April 28, 1987 is a nullity.
No motion for a new trial was filed in the record. Furthermore, "the motion to amend the judgment does not stop the execution or definitiveness of the judgment sought to be amended. This is so because only non-substantive amendments can be made. If the amendment is substantive, it could only be made by a motion for a new trial." Woodard v. J & M Seafood Restaurant, 413 So.2d 536, 537-38 (La.App. 4th Cir.1982) and the cases cited therein. See also, Tuttle v. Tuttle, 430 So.2d 269 (La. App. 5th Cir.1983) affirmed 462 So.2d 175 (La.1985).
Since the trial court lacked the authority to order a substantive amendment of the April 1, 1987 judgment, that April 28, 1987 judgment is a nullity. Duffy v. Duffy, 506 So.2d 225 (La.App. 5th Cir.1987).
However, we note that the April 1, 1987 judgment is silent with regard to Bassett's reconventional demand. In addition, evidence was offered at trial on Bassett's defamation claim. Furthermore, the April 1, 1987 judgment did not expressly reserve Bassett's rights to pursue the defamation claim. We have held that "the silence of *416 the trial court on an issue raised by the pleadings and on which evidence was offered is to be taken as a rejection of that demand, in the absence of an express reservation." Serrate v. Serrate, 472 So.2d 137, 138-39 (La.App. 5th Cir.1985). See also, Reed v. Verwoerdt, 490 So.2d 421 (La.App. 5th Cir.1986).
Therefore, the April 1, 1987 judgment includes a rejection of Bassett's reconventional demand on his defamation claim. Serrate, supra.
On September 4, 1987 Ernst filed a motion in this court to dismiss Bassett's appeal for untimeliness. This court referred that motion to the merits pursuant to Uniform RulesCourts of Appeal Rule 2-8.1. Ernst argues that since Bassett did not appeal the April 28, 1987 amended judgment which deals with Bassett's reconventional demand, that April 28, 1987 judgment is now final. We disagree.
Bassett correctly and timely appealed the April 1, 1987 judgment. The April 28, 1987 amendment is a nullity and the only judgment he could appeal is the April 1, 1987 judgment.
Ernst also contends that since Bassett referred to himself as "defendant" in his motion for appeal, that he is only appealing from the main demand and not from the adverse ruling on his reconventional demand. We find the method in which Bassett chose to style himself to be of no moment since he clearly indicates in his motion that he is appealing from the April 1, 1987 judgment. As indicated above, that judgment includes a rejection by the trial court of his reconventional demand. Therefore, the adverse ruling by the trial court as it relates to Bassett's reconventional demand is also before us. Accordingly, Ernst's motion to dismiss Bassett's appeal as it relates to his reconventional demand is denied.
FACTS:
The testimony at trial set forth the following facts: Mrs. Virginia Ernst, wife of/and Dr. Ernst had been saving for years to purchase a 1956 Bentley automobile. This car was to become the first car ever owned by Dr. Ernst. Dr. Ernst explained that the reason he wanted to own such a car was because it was "quite elegant" and that it would last a long time. Mrs. Ernst referred to the car as their "pride and joy."
Mrs. Ernst purchased a 1956 Bentley in July, 1981 as a gift for her husband. She consulted with Michael Lee (Lee), an expert in antique and special interest cars, regarding recommendations for renovating the car. Lee, who at the time owned New Orleans Antique Cars, referred Mrs. Ernst to Tom Gaffney (Gaffney) for major mechanical work and to Bassett for renovation.
Gaffney worked on the car in July 1981. Thereafter it went to Bassett who redelivered it to Gaffney at some later point.
It was Mrs. Ernst who first initiated contact with Bassett. Although Bassett disputes in brief that he was contracted to do "restoration", but rather was hired to perform certain repairs, the testimony at trial clearly establishes that he was retained for the purpose of "restoration". In fact, Bassett himself testified that it was his company which performed certain "restoration" of the vehicle. Bassett's employee, Martin Montgomery (Montgomery) also testified that the work done was "restoration" when he stated that "at the completion of the restoration is when we did the brakes." [Emphasis supplied].
According to Mrs. Ernst, the car obviously was in need of painting, refinishing and woodwork restoration; however, she and her husband relied on Bassett's expertise for any remaining restoration needs.
Bassett originally had the car from July 1981 until September 1982 when it was first delivered to Dr. Ernst. During this period, Gaffney had the car approximately four or five months for the purposes of mechanical repair.
On September 20, 1982 Dr. Ernst picked up the car from Bassett for the first time, paying Bassett $14,128.09.
Dr. Ernst testified that he brought the car a total of three times to Bassett after the first delivery in September 1982. Although Dr. Ernst complained of several *417 problems with the car, Bassett failed to remedy these.
Dr. Ernst and his wife were particularly frustrated by not being able to use the car when it rained. Mrs. Ernst recalled one evening when she got a lap full of water and wet feet from water leakage during a rain.
Mrs. Ernst and her husband also noticed discoloration on the trunk of the car, giving the appearance of having been painted in two different colors. They also noticed "blistering" of the paint, paint chipping, and difficulty in opening and closing the doors and trunk. Due to the water leakage, the carpet, leather paneling and woodwork were damaged.
After Bassett failed to make the necessary corrections, Dr. Ernst brought the car to Estes Cadillac Rolls Royce in New Orleans. Estes repaired the water leakage, doors and trunk.
The trial judge indicated for the record that he had viewed the car in its present condition. He ruled in favor of Dr. Ernst finding that the work was not performed in a satisfactory or workmanlike manner.
With regard to the reconventional demand on the defamation claim, the testimony at trial set forth the following facts: Lee testified that in February or March, 1983 Dr. Ernst called him and suggested that he refrain from referring people to Bassett for automotive work. He told Lee that Bassett was a "charlatan." After Dr. Ernst called Lee, Lee in turn called Bassett and told Bassett the conversation.
Lee could not recall Bassett's reaction to the information. No one else heard the conversation between Dr. Ernst and Lee and Lee never repeated it to anyone other than Bassett.
Despite Dr. Ernst's accusations, Lee's opinion of Bassett's competence remained unchanged. He continued to refer people to Bassett with the same frequency as before. In addition, Lee believed that Dr. Ernst was merely stating his opinion.
Anthony Piazza (Piazza), President of Southern Tire and Supply Company, testified that he saw Dr. Ernst as a patient and that he also knows Bassett. Dr. Ernst was upset about Bassett's work. Neither at trial nor in his earlier deposition did Piazza indicate with reasonable probability the exact words used by Dr. Ernst. When pressed to respond, the strongest statement he made was that he "believed" that Dr. Ernst said Bassett was dishonest and incompetent.
During his deposition, he stated "I can't remember the words exactly how Dr. Ernst used them except that he definitely made it clear to me that ... he had no love for [Bassett] at all."
Despite Dr. Ernst's dissatisfaction with Bassett, Piazza's opinion of Bassett remained unchanged. He continued to use Bassett.
Appellant now assigns the following errors:
1. That the trial court erred in awarding damages for "cost of repairs" in the amount of $2,437.46 where there was no evidence (industry standards) was [sic] produced to support the finding that the work performed was done in a workmanlike [sic] manner;
2. That the trial court erred in awarding damages for "cost of painting vehicle" in the amount of $3,000.00 where said amount is excessive considering age of the paint job (long use by Ernst), the kind of paint job initially bargained for, the failure of Ernst to mitigate further damage and the failure of the evidence to show "dings" and "chips" were related to the workmanship involved in the paid job itself;
3. That the trial court erred in awarding damages for "inconvenience, loss of use and aggravation" in the amount of $1,000.00 where same is unsupported by competent evidence, and
4. That the trial court erred in failing to award damages to Bassett for defamation where the court found that Ernst had defamed Bassett and further that the court failed to take into account that the utterances by Ernst to Tony Piazza that Ernst had accused Bassett of "dishonesty" were also defamatory.
*418 MANIFEST ERROR:
Appellant's major contention is that the trial judge was manifestly erroneous in awarding damages as follows:
COST OF REPAIRS IN THE AMOUNT OF $2,437.46:
At the outset we note that there is sufficient testimony in the record to support the trial court's conclusion that the work was not performed in a workmanlike manner.
At trial there was contradictory testimony. On one hand Bassett and Montgomery testified that they were unable to find any significant water leakage. Bassett also testified that in time the door seals would "seat" properly. If he made the doors easier to close this would compound the leakage problem. With regard to the paint job, he testified that the job was a "good paint job" but not one of "show quality."
However, Milton Hilbert (Hilbert), an expert in body work and painting, testified that when he saw the Ernst vehicle in 1983 he noticed that it appeared that the trunk was "spot painted" after the entire car was painted. Therefore, the trunk looked as if it had two distinctively painted areas. He also found that the doors were not aligned properly, causing chipping.
Hilbert further testified that there was "blistering" on the back of the right fender due to "trapped solids" resulting from applying paint to an underside which was still wet. The blistering was still evident on the date of trial.
Based on Hilbert's observations of the car in 1983 as well as on the date of trial, he concluded that the car needs to be repainted as the previous paint job is now "cured." He estimated the cost of repainting to be $3,000.00 to $3,500.00.
Robert Owen Barnes (Barnes) was deposed. He was manager of the body shop, parts and services departments at Estes during the time Ernst brought his vehicle to Estes.
Barnes saw the water leakage. He also noticed that both of the wing windows located on the right and left front doors had leaking seals. Furthermore, the gate post at the windshield on the right side of the car was leaking as well. In addition, the seals around the doors were leaking. The leaking door seals caused the doors to be difficult to close tightly.
When he examined the seals around the doors, he discovered that they were not the correct seals since they were not manufactured by Rolls Royce Bentley. The door seals had to be replaced. Barnes replaced the door seals on all of the doors; they were defective. He also had the window felt replaced since this item also acts as a seal. The window felts were not in working order. They were defective and had to be replaced. The cost of replacing the doors seals on the right door totaled $1,001.70 for parts and labor.
The cost for replacing the left door seals, as well as to reseal the weather strip of the post on the windshield totaled $363.47. The cost for replacing the window felts totaled $380.24 plus tax.
Barnes testified that the replacement repairs Estes implemented were necessary since the parts replaced were defective. After this work was done the leakage problem was corrected except for the right vent wing window. Barnes was unable to obtain seals from Rolls Royce Bentley since they did not make this part anymore. Therefore, Barnes sealed the right wing window shut.
In addition, Barnes testified that Bassett did not install the door seals and window felts properly. The doors would not close unless they were slammed hard as a result of the improper installation.
The total for the repairs undertaken by Estes to repair the leakage problem was $1,745.41.
As previously noted Dr. Ernst testified that the carpet, leather, and woodwork had been ruined by water damage caused by the leaks. Bassett testified that cost for recarpeting would be from $900 to $1,000;[1] while the cost of woodworking would be $200$300.
*419 Thus, the maximum award would be $3,045.41 while the minimum would be $2,345.41. Since the figure of $2,437.46 is within the range given at trial by the expert testimony and therefore supported by the evidence we find no abuse of discretion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Reck v. Stevens, 373 So.2d 498 (La.1979).
Furthermore, a credibility determination by the trial court where there is a conflict of testimony is entitled to great weight. Canter v. Koehring, 283 So.2d 716 (La. 1973).
COST OF PAINTING IN THE AMOUNT OF $3,000.00:
Appellant contends that Dr. Ernst did not bargain for a paint job other than the type which Bassett supplied. The trial court evidently attached greater reliability to the experts who testified that a new paint job was necessary. There is also testimony that the problem with the paint job was not limited to "chipping" but also consisted of problems with "blistering" and discoloration. In addition, the trial judge had the benefit of visually inspecting the vehicle himself.
With regard to the $3,000 amount chosen by the trial court, the court evidently chose the lower estimate provided by Hilbert.
Accordingly, we find no abuse of discretion. Canter, supra; Arceneaux, supra; Reck, supra.
DAMAGES FOR INCONVENIENCE, USE AND AGGRAVATION IN THE AMOUNT OF $1.000.00:
The trial court evidently believed the testimony of Dr. Ernst and his wife that they were unable to use their car when it rained. They also testified that cloths had to be carried in order to wipe the car. In addition, Mrs. Ernst stated that she had to get out of the car on her husband's side due to difficulty opening the door. The difficulty opening the trunk made it difficult to get to the battery. Under these circumstances we find no abuse of discretion in the award of $1,000.00.
DEFAMATION:
Appellant contends that the trial court found that Ernst defamed Bassett but erred in failing to award damages. At the close of trial the trial judge expressed uncertainty as to whether defamation had been proven. He stated that he wanted to read the transcript before making a decision.
It is clear from his written reasons and the views expressed at the end of trial the trial judge concluded that no damages of any sort had been sustained by Bassett. Thus, despite the statement in his written reasons for the April 1st judgment that "Bassett was defamed," the trial court could not have found that the statements were legally defamatory since "all defamation, written or oral, is actionable without proof of pecuniary damages, because the interest protected is a person's reputation [footnote omitted] and his reputation is his property. [footnote omitted]." Comment, Defamation: A Compendium, 28 La. L.Rev. 82, 90 (1967) at 89 and the cases cited therein. The judgment of April 1st which is silent on the reconventional demand dismisses Bassett's claim and is therefore consistent with the conclusion that defamation had not been proven.
In Moreau v. Brenan, 466 So.2d 572, 573-74 (La.App. 5th Cir.1985) we set out the elements for defamation as follows:
Defamation in Louisiana is a quasi-offense, governed by LSA-C.C. art. 2315. To be successful, a litigant must prove the following elements: (1) defamatory words, (2) communication to persons other than the one alleging the action, (3) falsity, (4) malice, actual or implied, (5) resulting injury. Lees v. Smith, 363 So. 2d 974 (La.App. 3rd Cir.1978) and cases cited therein.
Appellant appears to argue that the use of the word "charlatan" by Dr. Ernst to Lee when speaking of Bassett and the suggestion by Dr. Ernst to Piazza of Bassett's dishonesty constitute statements which are defamatory "per se". In Moreau, supra at 574 we explained defamatory "per se" as:
Where the defamatory words impute immorality or other traits or acts calculated *420 to arouse hatred, ridicule, etc., the words are "defamatory per se." Where defamation per se is found, falsity and malice are presumed. Goldsmith v. Unity Industrial Life Ins. & Sick Benefit Ass'n., 13 La.App. 448, 128 So. 182 (1930); Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3rd Cir.1981), writ denied 410 So.2d 760 (La.1981). The amount of damages is left to the discretion of the trier of fact. Jaworsky v. Padfield, 211 So.2d 122 (La.App. 3rd Cir.1968).
Lee testified that Dr. Ernst called Bassett a "charlatan." However, he also testified that he believed Dr. Ernst to merely be stating his opinion. Thus, the expression "charlatan" was not "calculated to arouse hatred or ridicule" but rather to state an opinion. Moreau, supra.
With regard to Piazza's testimony, he was unclear as to the specific words used by Dr. Ernst.
In Brown v. News-World Publishing Corp., 245 So.2d 430, 432 (La.App. 2nd Cir.1971) the court explained that:
A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. [Citations omitted].
Furthermore, "[o]pinions based on truth or concerning wrongful conduct are not defamatory. Dimitry v. Levy, 161 La. 11, 108 So. 107 (1926); Coffee v. Smith, 109 La. 440, 33 So. 554 (1903); Foote v. Sarafyan, 432 So.2d 877 (La.App. 4th Cir.1982), writ denied; Heft v. Burk, 302 So.2d 59 (La.App. 4th Cir.1974), writ denied." Autry v. Woodall, 493 So.2d 716 (La.App. 2nd Cir.1986) at 718.
The trial court evidently concluded that Bassett suffered no injury to his reputation. Therefore he could not have been defamed. That conclusion is supported by the record.
Dr. Ernst in making statements in connection with the complaints of his dissatisfaction with the work performed by Bassett created the impression that he was expressing an opinion regarding the wrongful repair of his car.
The fact that both Lee and Piazza did not change in their referring customers to Bassett after hearing Dr. Ernst's dissatisfaction lends support to the fact that the words used by Dr. Ernst were merely expressions of opinion regarding the quality of work and were not defamatory.
We therefore find ample support in the record to support the trial court's dismissal of the reconventional demand. There is no abuse of discretion. Arceneaux, supra.
Accordingly, for the reasons stated, the judgment in favor of Dr. Ernst in the amount of $6,437.46 plus interest and costs is affirmed. In addition, the motion to dismiss the appeal of the reconventional demand is denied. Finally, the trial court's dismissal of Bassett's reconventional demand is affirmed.
Costs to be borne by appellant.
AFFIRMED.
NOTES
[1] Later in his testimony he said $400$450.